No. 13.—PLEASANT H. WHITAKER, claimant, plaintiff in error, *vs.* ELIZABETH STRONG, for use, &c. defendant in error.

[1.] The 2d section of the Act of 1806, regulating divorces, applies only to conditional or partial, and the 8th section, to total or absolute divorces.

[2.] The 2d section of the Divorce Act of 1806, was intended to substitute a remedy, at Common Law, for granting divorces from bed and board, similar to that which is provided in the English Ecclesiastical Courts.

[3.] In cases of partial divorce, no lien is created on the husband's property, until the rendition of the judgment or decree.

[4.] Two concurrent verdicts are not necessary, in cases of conditional divorce.

[5.] Under the old Constitution, no Legislative interposition was required, in cases of conditional divorce; but the action of the Court, alone, was final and conclusive.

Claim, in Heard Superior Court. Tried before Judge WARNER, May Term, 1854.

In April, 1845, Elizabeth Strong filed her libel for a divorce, "*a mensa it thoro*", against her husband, Creed T. Strong, in Heard Superior Court, alleging, as the ground therefore, cruelty towards plaintiff, on the part of the said Strong. No schedule of property was filed with the declaration. In January, 1846, she filed a schedule, setting forth the property of plaintiff and defendant, in general terms; and on the list, were four negroes, valued at $1500. In January, 1847, Strong sold the negroes to Whitaker, the claimant. In July, 1847, Mrs. Strong filed an amended schedule, setting forth the names and value of each of the negroes. At the October Term, 1848, of said Court, the first verdict was rendered in favor of plaintiff, granting her a partial divorce, and specifying the property she was entitled to receive. At the October Term, 1849, a second verdict was had, concurrent with the first, as to the separation, but not as to the amount of property decreed to the plaintiff. The verdict was as follows: "We, the Jury, find and decree that sufficient proofs have been submitted to our consideration, to authorize a partial divorce of the parties; that

Whitaker vs. Strong.

is, a divorce "*a mensa et thoro*"; that the plaintiff do have and recover of the defendant, the amount he has received of the plaintiff's father's estate; and we find and decree that each of the two children have and recover of defendant, Four Hundred and Fifty Dollars, out of the property of defendant, after the payment of his just debts," &c.

On this verdict, a judgment was entered up and execution issued thereon, for the sum of $900, on the 1st day of November, 1849, which execution was levied, on the 19th December, 1849, on three of the four negroes returned in the schedule, and sold by Strong to Whitaker; and on the same day, Whitaker interposed his claim to the said negroes.

The claim came on to be tried, at the November Term, 1852, of said Court, when much testimony was introduced, but which it is unnecessary here to set forth. The Jury found three negroes, to-wit: Harriet and her two children, subject to the *fi. fa.:* Whereupon, Counsel for the claimant moved the Court for a new trial, upon the following, among other grounds: Because the Court held and charged the Jury, "that the defendant's property was bound to answer the judgment of the Court, from the time of the filing the petition for divorce, provided a schedule was also filed, of the property of the defendant, which he owned and possessed, at the time of the application for divorce; and that defendant could not sell and convey such property, even to a *bona fide* purchaser, for a valuable consideration, so as to defeat the lien; and that the pendency of the suit with a certain schedule, was sufficient notice to make voidable any such sale, as far as the rights of the plaintiff and her children were concerned." The Court refused to award a new trial, and claimant excepted.

SIMS & HAMMOND, for plaintiff in error.

FEATHERSTONE, for defendant.

*By the Court.*—LUMPKIN J. delivering the opinion.

This is a proceeding under our Divorce Act of 1806, and requires an exposition of that Act, by this Court. It is as follows:

"Sec. I. The divorces recognized by this Act, shall be absolute, and totally dissolve the marriage contract; or conditionally, and only separate the parties from bed and board, and provide for separate maintenance and support of the parties and their issue.

"Sec. II. All cases of divorce, which shall come before the Superior Court, shall be tried by a special Jury, who shall inquire into the situation of the parties, before their intermarriage, and also at the time of trial, and in all cases where they shall determine in favor of a conditional divorce, they shall, by their verdict or decree, make provision out of the property of which the husband may be possessed, for the separate maintenance and support of the wife, and the issue of such marriage, which verdict or decree, the said Court shall cause to be carried into effect, according to the rules of Law, or according to the practice of Chancery, as the nature of the case may require.

"Sec. III. In all cases where the verdict shall be for an absolute divorce, the party whose improper or criminal conduct shall authorize such divorce, shall not be permitted to marry again during the life of the other party, and in case of such second marriage, the party so offending shall be subject to the pains and penalties enacted against bigamy : Provided, always, that where the marriage is declared void, for such causes existing before such intermarriage, as are recognized by the Ecclesiastical Courts, the said parties may again marry : any thing herein contained, to the contrary, notwithstanding.

"Sec. IV. In all cases where the Special Jury shall have brought in a verdict for an absolute divorce, and the General Assembly shall refuse to pass a law to carry the same into complete effect, it shall be lawful for either party to apply to the Superior Court of said county, after giving thirty days notice, in writing, of such application, to the adverse party, if within the State, and if out of the State, three months notice, in one of the public Gazettes; and it shall be the duty of such Court to appoint three commissioners, who shall inquire into the situation of the parties, before their intermarriage, and also at the

time of such inquiry; and shall determine upon the support or provision which may be necessary for the separate maintenance of the wife, having due regard to her situation before marriage, and also the situation of the husband at the time of such inquiry; and the said three commissioners, before they proceed to make the inquiry, shall take and subscribe, before one of the Justices of the Inferior Court, or Justices of the Peace of the county, the following oath or affirmation, viz:

'I, A B, do solemnly swear or affirm, that I will, without prejudice or partiality, faithfully inquire, and justly decide upon the case now submitted to me, and that I will make my report or decree thereon, according to the principles of justice and equity, to the best of my skill and understanding, so help me God.' And it shall be the duty of such commissioners to report their decision or decree in the premises, to the next Superior Court of the county aforesaid, which shall cause the same to be entered as the judgment of said Court, subject, nevertheless, to be altered or modified by the said Court, provided application be made to the next Superior Court of said county, for that purpose, stating the grounds upon which such application is founded; and in such case, it shall be the duty of the said Superior Court, to refer the said decree or report, to the same commissioners, with two additional commissioners, who shall take the oath herein before prescribed, and shall proceed to re-examine the said decree, and report their decision or decree in the premises, to the next Superior Court. of said county; which shall be entered as the judgment or decree of said Court.

"Sec. V. All commissioners appointed under and by virtue of this Act, shall have power to compel the attendance of such witnesses as may be deemed necessary by the parties, before them, at such time and place as they may appoint for their meeting, and shall also have competent power and authority to administer an oath to such witnesses, and shall take down the testimony of such witnesses in writing, which shall be annexed to their decree, and deposited in the Clerk's office.

"Sec. VI. In all cases where provision is made for the

separate maintenance of the wife, according to the provisions of this act, the husband shall not be subject to any contract, made thereafter by such wife, but in all and every such case, the wife shall be subject to the payment of her own debts, out of her separate maintenance, during the time that such separation and separate maintenance shall continue.

"Sec. VII. In all cases of divorce, the issue of such marriage shall not be bastardized, but shall be capable of taking, by descent or distribution, from either of their said parents.

"Sec. VIII. In all cases of application for a divorce, the party applying, shall render a schedule, on oath, of the property owned or possessed by said parties, at the time of such application; or, if the parties have separated, at the time of such separation, which shall be filed of record by the Clerk of the Superior Court, and after all just debts shall be paid, shall be subject to a division or equal distribution, between the children of such parties, except the Jury, before whom the same may be tried, shall think proper to allow either party a part thereof." (*Prince's Digest*, 188.)

The 4th, 5th and 6th sections of the Act of 1806, to which I have already referred, authorize commissioners to provide alimony for the wife, when the Legislature refused to ratify a *total divorce.* No provision is made, however, when a partial divorce is not affirmed. The inference is plain—*partial divorces* were never submitted to the Legislature; and if not, then the 2d verdict, which is to be obtained under the Constitution of 1833, does not apply to partial divorces, notwithstanding the intimation of Mr. *Prince* and the practice of the Courts to the contrary.

It will be remembered, that under the previous Statute of 1802, all divorces were total. The Act of 1806 makes provision for both absolute and conditional divorces.

[1.] There is an apparent conflict, I admit, between the 2d and 8th sections of the Act of 1806. It is our duty to reconcile them, if we can. The Legislature did not mean that any portion of this or any other Statute, should be inoperative. Its design, beyond all question, is not to be defeated, if it can be

helped—*verba debent intelligi cum effectu.* Full sense and meaning should be given to every clause and provision, of every Act of the Assembly, and no part made void, if possible. But if this be impossible, we must say which shall stand and which fall. We believe that all parts of the Act can be enforced, upon the ground that the 2d section applies to *partial,* and the 8th to *total* divorces. Manifestly, they cannot both apply to the same proceeding. In the one, the Jury are to take into consideration the condition of the parties, before their intermarriage, and the estate of the husband, at the time of the trial. In the other, the time when the schedule is to be filed, indicates, clearly, the time, as to property, at which the inquiry of the Jury is to be directed, namely: when the libel is filed, or when the separation took place.

But what shows, still more conclusively, that these two enactments relate to different proceedings, is this: under the 2d section, the Jury, by their verdict, are to make suitable provision for the support of the wife and children: whereas, under the 8th section, the direction is, to give the whole of the property to the children, unless the Jury shall see fit to assign a part to the husband and wife.

[2.] We conclude, then, that the 2d section applies to conditional divorces only; and that cases of this sort are to be controlled and regulated according to the terms of this section. And it will be discovered, that by the 2d section of the Act, a remedy at Common Law was intended to be substituted and provided, for a similar proceeding in the Ecclesiastical Courts in England. In addition to the decree of separation from bed and board, that Court proceeded to award alimony; and to enforce the decree for alimony, the Common Law, as well as the Chancery Courts, but more especially the latter, would lend their assistance. Hence, the clause in this 2d section, that the decree of the Jury for support and maintenance, (which is alimony) is to be enforced according to the rules of Law, and the practice in Chancery.

[3.] If we are right then, in this view of the Statute, there was no lien created on the defendant's property, until the judg-

ment was rendered.   Up to that period, like any other free-man, he had the right to dispose of the whole or any portion of his property, to whomsoever he pleased, provided the con-veyance was not fraudulent, and made to hinder and defeat the finding for alimony, which might be made by the Jury against him.   If the husband, *bona fide*, sell his property, it is to be presumed that he has received, in lieu thereof, its representa-tive, in value.   The husband has got to live, after the separa-tion, as well as the wife, for whom he has to provide.   He is not likely, therefore, to waste or destroy his property.   But should he threaten to do so, or remove beyond the jurisdiction of the Court, the remedy, by bill of *quia timet* or writ of *ne exeat*, are both at the command of the wife, and are ample for her security.

In confirmation of the view we have taken of the true intent and meaning of the 2d section of the Act of 1806, if, indeed, it needed confirmation, I would refer to some of the other sec-tions.   Sections 4th, 5th and 6th contemplated a case where an absolute divorce could not be obtained, on account of the failure of the Legislature to ratify the action of the Court, un-der the old Constitution.   Under these sections, a provision was authorized to be made for the wife, precisely similar to that under the 2d section.   And it will be seen, that in order to fix the amount of the allowance, the commissioners are to direct their investigations, as to the condition of the husband, to the time at which their inquiry is made, viz: at the time of trial.

So far, then, as the proceeding for a partial divorce is con-cerned, it is unnecessary to file a schedule; and that if it be filed, it creates no lien; for whether it be necessary to file it or not, or whether it be actually filed or not, still, the Jury, in such cases, must, under the law, limit their inquiry to the condition of the parties before intermarriage, for the purpose of ascertaining what portion of the property came by the hus-band, and what by the wife; and having made this prelimi-nary examination, out of such estate as the husband has, at the time of the trial, suitable provision is to be made, for the use and maintenance of the wife and children.

It is needless to consider the several rulings of the Court in detail. In the opinion of this Court, there is error in the whole of them, so far as they assume that the lien created on the property of the defendant, was from the filing of the schedule, instead of the date of the decree. And the decrees, first and last, (for there were two of them,) being both subsequent to the sale to Whitaker, by Strong, the purchase of the negroes of the defendant, can only be set aside for fraud or some other such cause.

[4.] Had we taken a different view of this point, then it would have become necessary to consider whether partial divorces require two concurrent verdicts; for it will be observed, that the levy made on the property in controversy, was by virtue of an execution issuing on the second or last judgment.

For myself, I am perfectly satisfied, and I believe my brethren concur with me, that two verdicts are neither required nor authorized, in cases of conditional divorce. And that the second verdict comes under the amended Constitution of 1833, in lieu of the Legislative ratification of the single verdict, in cases of absolute divorce, before the change in the Constitution was made.

[5.] During the two years that I served in the Legislature —1824, 1825—numerous applications for divorces came before the General Assembly, and not one of them, I am sure, were from bed and board; and, I am informed by the oldest members of the bar, gentlemen whose *professional* memory runs back to the year when the Act of 1806 was passed, that such a thing as invoking Legislative aid, to render valid partial divorces, was never heard of. One verdict was deemed final and conclusive, in all such cases.

Divorces, under the Act of 1802, as already remarked, were all total ; and hence the reference, in the preamble of that Act, to Legislative interposition.

What was the mischief which gave rise to the amendment of 1833 ? The preamble discloses it: "Whereas, the frequent, numerous and repeated applications to the Legislature, to grant divorces, has become a great annoyance to that body, and is

well worthy their attention, as well on account of the expense consequent on said applications, as the unnecessarily swelling the Laws and Journals; and believing that the public good would be as much promoted, and that the parties would receive full and complete justice : *Be it enacted,*" *&c.*

But partial divorces were not within the evil complained of, and consequently, are not within the remedy provided by this amendment.

But the very terms of the amendment, itself, are conclusive upon the subject : " Divorces shall be final and conclusive, when the parties shall have obtained the concurrent verdicts of two Special Juries, authorizing a divorce, upon *legal principles.*" This technical phraseology, " legal principles", both under the old and amended Constitution, has always been held to mean such principles as would authorize total divorces, at Common Law : in other words, neither the 9th section of the 3d article of the Constitution of 1798, nor the amendment of 1833, had any reference, whatever, to conditional divorces.